IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DR. CARLOS I. GONZALEZ-VARGAS
DR. JOSE LASALDE DOMINICHI
DR. CARMEN MALDONADO-VLAAR
DR. ELVIRA CUEVAS
DR. BRAD WIENER
DR. ANTHONY SLAGLE
DR. GERARDO MORELL
DR. FERNANDO RENAUD
DR. JOSE GARCIA-ARRARAS
DR. ELVIA MELENDEZ-ACKERMAN

Plaintiffs

vs                                                CIVIL 05-1459CCC

ANTONIO GARCIA-PADILLA, President
University of Puerto Rico;
GLADYS ESCALONA, Chancellor,
University of Puerto Rico, Río Piedras
Campus
SEGUNDO CARDONA, Member of the
Board of Trustees of the University of
Puerto Rico
RAFAEL ROVIRA PASSALACQUA
Member of the Board of Trustees of the
University of Puerto Rico
ALBERTO BACO, Member of the Board of
Trustees of the University of Puerto Rico
JOSE RAMON GONZALEZ, Member of
the Board of Trustees of the University of
Puerto Rico
SALVADOR ANTONETTI, Member of the
Board of Trustees of the University of
Puerto Rico
EDGARDO CABAN, Member of the Board
of Trustee of th University of Puerto Rico
MILTON COLON, Member of the Board
of Trustees of the University of Puerto Rico
HECTOR HUYKE, Member of the Board of
Trustees of the University of Puerto Rico
JAVIER MORALES, Member of the Board
of Trustees of the University of Puerto Rico
ISABEL PICO, Member of the Board of
Trustees of the University of Puerto Rico
MARISARA PONT, Member of the Board
of Trustees of the University of Puerto Rico
YGRI RIVERA DE MARTINEZ, Member of
the Board of Trustees of the University of
Puerto Rico

Defendants

CIVIL 05-1459CCC                    2

O R D E R

This action for declaratory and injunctive relief was brought by University of Puerto Rico (UPR) professors and researchers against the UPR's President, Antonio García-Padilla, the Chancellor of UPR's Río Piedras Campus, Gladys Escalona, and the members of the UPR's Board of Trustees, in the midst of the student strike of April-May 2005. Plaintiffs invoked federal question jurisdiction. The following allegations of the amended complaint defined plaintiffs' claims:

- "Plaintiffs . . . are either, direct or indirect grantees, and as such, are recipients of Federal monies from the National Institutes of Health and the National Science Foundation and other Federal Agencies for scientific research." Amended Complaint (docket entry 16), at ¶1.2.

- "With the awarded funds, the Plaintiff-professors are to conduct scientific experiments, some with live animals, radioactive materials, hazardous chemicals, controlled substances, plants, etc." Id.

- "Such scientific processes require and impose on all the named Defendants strict and mandatory binding obligations as found in Federal guidelines, grant awards and contracts, related to the facilities, handling, management, and funding of such scientific experiments that resulting from the UPR's shutdown occurring at approximately 4:00 A.M. on April 7, 2005, are not being complied with, causing the imminent loss of research, animals, studies, and Federal funds." Id.

- "This action is . . . to insure that the Defendants follow Federal laws, regulations, and the Constitution of the United States, thereby allowing the professors to safely enter the campus, preserve the integrity of the scientific research, care for the animals used for experiments as mandated by statute, protect their property rights and avoid the unnecessary waste of Federal grant money." Amended Complaint (docket entry 16), at ¶ 1.3.

Plaintiffs claimed a violation of their property rights under 42 U.S.C. §1983 and requested injunctive relief against defendants to prohibit them from precluding their secure and

CIVIL 05-1459CCC                                3

unlimited access to their research facilities and to ensure that they were allowed to securely and fully comply with their research.

Upon plaintiffs' motion, the Court entered a Temporary Restraining Order (TRO) on April 29, 2005 (docket entry 9), specifically finding that it appeared "from the complaint and the exhibits attached to it that Plaintiffs [would] suffer immediate and irreparable injury before the ... claim [could] be heard at a preliminary injunction hearing."  TRO  (docket entry 9), at p. 2.  It, therefore, ordered that, pending a hearing set for May 10, 2005 on plaintiffs' request for a preliminary injunction, "Defendants and their agents, servants, employees, and any other persons in active concert and participation with them are . . . ordered to refrain from excluding Plaintiffs from entering the University of Puerto Rico, Río Piedras campus."  Id., at ¶1.

On May 6, 2005 the parties filed a joint motion requesting that the TRO be extended until May 19, 2005, inasmuch as they were engaged in conversations to find "a solution to the situation that prompted plaintiffs to file their action."   See Joint Motion for Extension of Temporary Restraining Order of April 29, 2005 (docket entry 13), ¶2.  By Order issued on May 10, 2005, this motion was granted and the TRO extended until May 19, 2005, with the hearing on the request for preliminary injunction rescheduled for May 18, 2005 (docket entry 14).  On May 13, 2005, plaintiffs filed an amended complaint (docket entry 16).  Then, on May 16, 2005, defendants filed a Motion to Dismiss the Complaint (docket entry 18) stating that as the strike had unofficially ended during the first week of May 2005 and the campus had returned to normal and was open to everyone, plaintiffs' request for injunctive relief had turned moot.  Defendants also alleged that plaintiffs' allegations under the Due Process Clause were insufficient to state a claim.

On May 17, 2005, the parties jointly moved to continue the preliminary injunction hearing scheduled for the following day, asking that it be consolidated with the permanent injunction hearing and that the latter be set before mid-August 2005 (docket entry 20).  The Court vacated the preliminary injunction hearing (docket entry 21), and while it initially refrained from resetting the consolidated hearings until disposition of defendants' motion to dismiss (see

CIVIL 05-1459CCC                                    4

endorsed Order on docket entry 20), on June 22, 2005 a Case Management Order was issued
establishing various deadlines and settings, among them the trial for March 30, 2006.  The Court
never entertained the dismissal motion, however, as plaintiffs moved for the voluntary dismissal
of the action on September 21, 2005 (docket entry 35), noting that "[o]n June 27, 2005 the
Board of Trustees created a new policy at the University of Puerto Rico which prohibits the
closures of the campuses, including the Río Piedras campus.  Certification number 90 of 2004-
2005 specifically addresses the non-closure and the access to the University facilities."  The
parties filed a Stipulation of Dismissal the following day (docket entry 36), and the Court entered
judgment dismissing the action on September 30, 2005 (docket entry 37).

       On the basis of the factual and procedural history delineated above, plaintiffs consider
themselves to be the prevailing party under 42 U.S.C. §1988 and have filed the Application for
Attorney's Fees and Expenses now before us (docket entry 38).  Plaintiffs claim that the issuance
of the TRO and the Case Management Order[1] prompted defendants to modify their behavior
towards them resulting in the issuance of Certification Number 90 of 2004-2005.  Defendants
opposed the motion (docket entry 40), averring that plaintiffs' request is barred by Supreme
Court precedent and that they never obtained any relief from the Court based on the merits of
their claims.

       Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and
Human Resources, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) established the
standard to be applied in determining whether a party is a prevailing party.  This case held that
the "catalyst theory" is not a permissible basis for the award of attorney's fees and asserted that
the Court has never awarded attorney's fees where there is no judicially sanctioned change in the
legal relationship of the parties.  Rejecting the catalyst theory, the Court observed that "[a]
defendant's  voluntary change in conduct, although perhaps accomplishing what the plaintiff

_____

       [1]  Reliance on the Case Management Order (CMO) is frivolous since the CMO is a
management tool which does not carry the necessary judicial imprimatur taken into account in
the "prevailing party" analysis.

CIVIL 05-1459CCC                    5

sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change." Buckhannon, 121 S.Ct. at 605 (emphasis in original).  The Court recognized judgments on the merits and settlement agreements enforced through a consent decree as the basis for an award of attorney's fees.  In other words, there must be some judicial relief on the merits of a party's claim before he can be said to prevail.  Buckhannon, 121 S.Ct. at 603 (quoting Hewitt v. Helms, 107 S.Ct. 2672 (1987).

        After Buckhannon, there was a split among courts on the kinds of judicial actions that conferred prevailing party status.  The Second Circuit in Preservation Coalition of Erie County v. Federal Transit Administration, 356 F.3d 444, 451 (2nd Cir. 2004) discussed the split among circuits, observing that the First Circuit, in contrast to the Eight Circuit, has interpreted Buckhannon more broadly.  It commented on the fact that the First Circuit had not limited fee awards to enforceable judgments or to consent decrees and cited Me. Sch. Admin. Dist. No. 35 v. Mr. & Mrs. R., 321 F.3d 9 (1st Cir 2003), indicating that the court had observed that when interlocutory orders conferred substantive relief, they have often "been viewed as sufficient to carry the weight of a fee award."  Id., at 15.  Despite the language of Me. Sch. Admin. Dist. No. 35 quoted by the Second Circuit as an expansive interpretation of Buckhannon, the First Circuit in the later case of Smith  v. Fitchburg Public Schools, 401 F.3d 16 (1st Cir. 2005) commented that "we have not squarely addressed whether judgments on the merits or consent decrees are the only forms of relief sufficient to confer prevailing party status, whether a functional equivalent of such relief may be adequate, or whether any other types of relief could satisfy Buckhannon's requirements."  Id., at 23.  The Court in Fitchtburg found that "neither the interlocutory orders and rulings, nor the final order dismissing the case provide the necessary judicial imprimatur on the change in the legal relationship between the parties."  Id.  Upon applying the Buckhannon standard to the case, the Court in its inquiry said:  "As we have not decided in this circuit whether to adopt a narrow or broad reading of Buckhannon, we do not foreclose the possibility of a broad reading, and look to determine whether Chelsea's relief, even though not in the form of a consent decree or a final judgment on the merits, comports with the overarching

CIVIL 05-1459CCC                      6

requirements of <u>Buckhannon</u>."  <u>Id.</u>, at p. 26.  Ultimately, the Court concluded that the judicial intervention did not provide sufficient imprimatur on plaintiff's relief to give her prevailing party status under <u>Buckhannon</u>.

In contrast, the First Circuit found in <u>Me. Sch. Admin. Dist. No. 35</u> that relief obtained through a temporary restraining order in that case provided substantive relief which went beyond merely maintaining status quo.  At footnote 6, 321 F.3d at 16, the Court stated point blank that the party's solid ground on which to base its prevailing party status was "not altered because the critical decision took place on a motion for a TRO."   The Court distinguished between interlocutory orders which are merely procedural, pro forma and serve only to maintain the status quo, and those which actually accomplish "something substantive for the winning party."  <u>Id.</u>, at p. 17.  It is significant to note that the First Circuit highlighted the fact that the proponents of the restraining order, <u>i.e.</u> plaintiffs in that case, failed to proffer substantial evidence in support of their position.  The Court noted that "[b]ecause the district court denied injunctive relief on the basis that the School District had not adduced sufficient proof to satisfy the section 1415(k)(2) standard, it is readily evident that the appellants successfully defended the First Suit <u>on the merits</u>."  <u>Id.</u>, at p. 17 (emphasis in original).  It, therefore, declared appellant's victory as material.

Other cases have compared situations where temporary restraining orders have not resulted in accomplishing substantive relief for the party with cases in which fee awards have been granted for interlocutory injunctive relief.  <u>See</u> cases discussed in <u>Coalition for Basic Human Needs v. King</u>, 691 F.2d 597, 601-02 (1st Cir. 1982).  The decisions in  which TROs have been found to have the necessary judicial imprimatur on the change in the relationship between the parties have all engaged in an assessment of the merits of the case by way of probing in the probability of success.  Such was not the situation in the case before us.  The TRO issued on April 29, 2005 was limited to a finding that "[i]t appear[s] from the complaint and the exhibits attached to it that Plaintiffs will suffer immediate and irreparable injury before [their] claim can be heard at a preliminary injunction hearing."  Precisely because the irreparable injury factor

CIVIL 05-1459CCC                              7

loomed large when the TRO was issued, the Court did not engage in the touchstone of the balancing process of injunctive relief, <u>i.e.</u> probability of success on the merits.  The restraining order in this case falls within the category of a merely procedural order which served only to maintain the status quo as stated in <u>Me. Sch. Admin. Dist. No. 35</u>.

Having found that the only judicial order issued in this case lacks sufficient judicial imprimatur to give plaintiffs prevailing party status, their Application for Attorney's Fees (**docket entry 38**)  is DENIED.

SO ORDERED.

At San Juan, Puerto Rico, on September 27, 2006.

S/CARMEN CONSUELO CEREZO
United States District Judge